USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Trustees Of The New York City District Council Of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, *et al.*,

Plaintiffs,

–v–

M.C.F. Associates, Inc., *et al.*,

Defendants.

20-cv-1033 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

The Plaintiffs bring this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act and Section 301 of the Labor Management Relations Act of 1947 to recover allegedly delinquent employer contributions that they claim are owed. See Dkt. No. 1 ("Compl.") ¶ 1. Before the Court is Plaintiffs' motion to strike two of Defendants' affirmative defenses. Dkt. No. 23. For the reasons below, that motion is GRANTED.

**I. Background**

Plaintiffs initiated this action on February 6, 2020. Dkt. No. 1. They assert claims under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act and Section 301 of the Labor Management Relations Act ("LMRA") of 1947. In the Complaint, Plaintiffs argue that Defendant M.C.F. Associates, Inc. ("M.C.F.") was either a party to or manifested an intention to be bound by two collective bargaining agreements—one with the New York City District Council Carpenters or its predecessor, and the other with the North Atlantic States Regional Council of Carpenters or its predecessor (collectively, "Unions"). Compl. ¶¶ 11–12. According

to the Plaintiffs, the CBAs required M.C.F. to make periodic contributions to the NYC Funds and the Northeast Funds for work performed within the trade and geographical jurisdiction of the applicable union, and they also required M.C.F. to provide its books and payroll records to the Funds for the purpose of conducting an audit to ensure compliance with the CBAs. *Id.* ¶¶ 13–14.

Plaintiffs also allege that in 2018, M.C.F. was wound down and its business was transitioned to Defendant Performance Construction, Inc. ("Performance"). *Id.* ¶ 25–26. According to Plaintiffs, Performance is "the alter ego and successor" of M.C.F.; Plaintiffs allege that the two companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Id.* ¶¶ 26–36. And according to Plaintiffs, the decision to wind down M.C.F. and transition its work to Performance was done to circumvent the requirements of the CBAs. *Id.* ¶¶ 25, 37. In line with this theory, Plaintiffs seek to enforce the terms of the CBAs against M.C.F., as a signatory to the CBAs, and against Performance, as M.C.F.'s alter ego and successor. *Id.* ¶¶ 42–53, 55–66, 68–73.

On June 18, 2020, each Defendant filed an Answer to the Complaint. *See* Dkt. Nos. 14, 15 (collectively, "Answers"). The Answers are identical, save for the Answers' opening sentences that identify the Defendant whose Answer it is. In their Answers, the Defendants denied many of the allegations contained in the Complaint, including that Performance is an alter ego and successor of M.C.F., that the carpentry worked performed by Performance is within the trade or geographic jurisdiction of the CBAs, or that M.C.F.'s and Performance's operations are as similar as the Complaint suggests. *See* Answers ¶¶ 9–16. Defendants also asserted seven affirmative defenses. *Id.* ¶¶ 17–37. On July 9, 2020 Plaintiffs moved to strike two of the affirmative defenses. Dkt. No. 23. Defendants filed their opposition on August 24, 2020, Dkt. No. 31, and Plaintiffs' reply was filed on September 15, 2020, Dkt. No. 34.

Defendants then moved to strike the two declarations that were submitted with the reply on the basis that attached to the declarations were the CBAs and "related documents" that had not previously been provided to the Defendants. *See* Dkt. No. 35. They thus request that the Court strike the two declarations and ignore the parts of Plaintiffs' reply that relied on the documents attached to the declarations. *Id.* Plaintiffs oppose the request. Dkt. No. 36.

## II. Legal Standard

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding. *Tardif v. City of New York*, 302 F.R.D. 31, 31–32 (S.D.N.Y. 2014). When assessing whether to strike an affirmative defense, district courts in this Circuit consider first whether the affirmative defense satisfies the plausibility standard articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), recognizing that "applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97–98 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Second, district courts must also consider whether plaintiffs moving to strike an affirmative defense have shown that "there is no question of law which might allow the defense to succeed," keeping in mind that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co.*, 918 F.3d at 98. Third, court must assess the degree to which "the moving party . . . is prejudiced by the inclusion of the defense," keeping in mind that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* at 98–99.

## III. Discussion

The Answers include seven affirmative defenses against the claims in the Complaint. *See* Answers at 4–9. Plaintiffs move to strike the second and fifth affirmative defenses. The second affirmative defense asserts unclean hands, while the fifth asserts that enforcement of the claims asserted in the Complaint against Performance would violate the Defendants' equal protection and freedom to contract under state and federal law. *Id.* ¶¶ 24–32, 35.

As a preliminary matter, the Court addresses Defendants' request that the declarations submitted alongside Plaintiffs' reply be stricken and that the Court ignore the parts of Plaintiffs' reply that rely on the documents attached to those declarations. *See* Dkt. No. 35. The Court sees no basis to strike the declarations and the attached documents, as the agreements governing the relationship between the Unions and M.C.F. are integral to and incorporated by reference into the Complaint. *See, e.g.*, Compl. ¶¶ 11–14. Furthermore, to the extent that Defendants claim undue surprise, as a signatory to the agreements, M.C.F. was surely aware of the terms of the agreements and had access to them even before Plaintiffs filed them in the public docket. However, out of an abundance of caution, the Court will grant Defendants' request that it not consider those documents, and the parts of Plaintiffs' reply memorandum that expressly rely on those documents, in resolving the underlying motion to strike.

### A. Unclean Hands

Plaintiffs first move to strike the second affirmative defense, which asserts that Plaintiffs should be barred from seeking equitable relief under the doctrine of unclean hands. *See* Dkt. No. 24 ("Pl. Br.") at 5–19; Answers ¶¶ 24–32. Defendants premise this affirmative defense on the theory that the Unions are responsible for the conditions of labor in New York, including the state of union labor as compared to non-union labor. Answers ¶¶ 24–32.

The equitable doctrine of unclean hands is an "ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). "Misconduct . . . unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." *A.H. Emery Co. v. Marcan Prods. Corp.,* 389 F.2d 11, 18 (2d Cir. 1968) (quotations and citations omitted). Thus, the doctrine applies "only where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation.'" *Specialty Mins., Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005) (citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933)). "This relation requirement has resulted in the 'narrowness of the doctrine's application.'" *Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019) (quoting *Specialty Mins., Inc.*, 395 F. Supp. 2d at 112).

To begin with, the premise on which Defendants' unclean hands affirmative defense rests is legally insufficient. Defendants base their second affirmative defense on the purported misconduct of the Unions in their general conduct over the last fifty years. *See* Dkt. No. 31 ("Def. Opp. Br.") at 4. Defendants do not attempt to argue that *Plaintiffs* have engaged in any misconduct that might make application of the doctrine proper, instead focusing exclusively on the "union's unclean hands." Def. Opp. Br. at 4. Defendants cite no cases where the unclean hands doctrine has successfully been invoked despite no misconduct being alleged on the part of the Plaintiffs. *Cf. Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019) ("To succeed on an unclean hands defense, a defendant must demonstrate that *the plaintiff* engaged in fraudulent, deceitful, or bad faith behavior, and that the

bad faith *related to the matter at issue* in th[e] litigation." (emphasis added) (citation and internal quotation marks omitted)); *Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208, 1219 (S.D.N.Y. 1989) ("What is material is not that the *plaintiff's* hands are dirty, but that he dirties them in acquiring the right he now asserts." (emphasis added) (citation omitted)).

Even assuming *arguendo* that the Unions' alleged misconduct could be attributed to the Plaintiffs, the unclean hands defense would be legally insufficient. Missing is a nexus between the Unions' alleged misconduct and the ERISA claims at issue here. *See Specialty Mins., Inc.*, 395 F. Supp. 2d at 112 (noting that the unclean hands doctrine only applies "where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation.'"). Defendants point to no direct relationship between the Unions' alleged misconduct and the enforcement of the CBA at issue here. At most, they attempt to argue that the general state of the labor market is the Unions' fault and that, as a result, a relationship exists between the Unions' generalized misconduct and enforcement of the CBA at issue. That argument, however, is irreconcilable with the relation requirement, which necessitates a direct connection between the bad faith acts and the matter at issue in the litigation. *See Med. Soc'y of the State of New York*, 332 F.R.D. at 150. Any allegations that exist to establish such a connection are so conclusory as to fall far short of the plausibility standard. *See GEOMC Co.*, 918 F.3d at 97–98.

Separately, Defendants' unclean hands theory is inconsistent with ERISA, since the statute limits the defenses available to an employer when sued by an employee benefit plan. *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). The Second Circuit has recognized two equitable defenses that can be raised against an ERISA claim brought under Section 515, neither of which applies here. *Id.* The general upshot of the limitations on

equitable defenses to ERISA claims, however, is that "once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.* Confronted with this case law, Defendants argue that these limits "[have] no application because the claims here are not ERISA claims but are extra-curricular claims for which the funds have no ERISA statutory privilege." Def. Opp. Br. at 4. Implicitly, their argument attempts to re-write the Complaint. As already stated, Plaintiffs bring this action under ERISA and the LMRA in order to recover contributions they allege are owed to the funds, and their argument rests on an alter ego or successor theory of liability.[1] But regardless of Defendants' disagreement with the legal sufficiency of Plaintiffs' ERISA claims, there is no basis to conclude that the claims at issue are not ERISA claims because they are expressly pleaded as ERISA claims. Indeed, Defendants' argument is circular; if Plaintiffs cannot bring these claims under ERISA, then they "would not be entitled to any equitable relief and the unclean hands defense would be superfluous." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 430 n.4 (S.D.N.Y. 2010). For these reasons, Defendants' unclean hands affirmative defense "is a legally insufficient basis for precluding [Plaintiffs] from prevailing on [their] claims." *GEOMC Co.*, 918 F.3d at 98.

Even assuming that Defendants had articulated a legally sufficient basis for their second affirmative defense, the Court would still be compelled to strike it on the basis that the Answers

[1] To the extent that Defendants argue that Performance cannot be held liable under the CBA because they are not signatories to the CBA, that argument fails to transform Plaintiffs' ERISA claim into a non-ERISA claim. The alter ego doctrine, on which Plaintiffs rely, can apply in the ERISA context. *See, e.g.*, *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010).

set forth exclusively conclusory allegations regarding the Unions' conduct over the last fifty years. They premise the affirmative defense on the basis that the Unions

> abandoned negotiations with real estate developers, owners and major contractors to designate union sites, allowed criminal infiltration into the unions, abandoned shop stewards on union sites to protect its members rights, declined to permit its workers to perform the more hazardous and less desirable construction activity and engaged in little or no activity to counter the huge growth in a highly capable non-union work force, with the effect that the developer/owner/contracts of work sites have for years now determine whether a work cite or job will employ union or non-union carpenters.

Def. Opp. Br. at 2–3; *see also* Answers ¶¶ 24–32.

None of these claims survive the Supreme Court's admonition that to satisfy the plausibility standards, the well-pleaded facts must do more than just "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These allegations are impermissibly conclusory, failing to point to any specific examples that would give credence to any of Defendants' allegations. The Second Circuit has made clear that the application of the plausibility standard is "context-specific" and that district courts should take heed of the fact that defendants generally have less time in crafting their affirmative defenses than do plaintiffs have in crafting their complaint. *See GEOMC Co.*, 918 F.3d at 96–98. Still, none of the allegations in the Answers surpass the plausibility standard that the Court of Appeals made unambiguously clear applies to affirmative defenses. *Id.* And crucially, the Defendants' factual allegations fail because they allege no facts about *Plaintiffs*, rather than the non-party Unions, and because they also fail to allege any facts that support the conclusory proposition that Plaintiffs are standing in for the Unions such that the acts of the latter should be imputed to the former. The lack of any non-conclusory factual allegations to support this affirmative defense, therefore, provides a separate basis to strike it.

Finally, Plaintiffs would be prejudiced by having to litigate Defendants' legally and factually insufficient affirmative defense. The Second Circuit has admonished that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *GEOMC Co.*, 918 F.3d at 98. But if, as here, the defense is neither factually insufficient nor legally valid, the general principle that "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant granting [Plaintiffs'] Rule 12(f) motion" applies. *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999). Forcing Plaintiffs to litigate the affirmative defense through trial establishes sufficient prejudice to further warrant striking the affirmative defense.

Accordingly, Plaintiffs' motion to strike the second affirmative defense is GRANTED.

**B. Freedom to Contract**

Plaintiffs also move to strike the fifth affirmative defense, which asserts that enforcement of Plaintiffs' claims against Performance would infringe on Performance's constitutional freedom of contract. Pl. Br. at 19–20; Answers ¶ 35. The Court GRANTS Plaintiffs' motion to strike this affirmative defense.

As an initial matter, Defendants do not attempt to plead facts to support this affirmative defense. Their Answers and their opposition brief each include a single conclusory paragraph stating that the Defendants' "freedom to contract" would be infringed were the Court to enforce a judgment against them. They do not identify any well-pleaded facts elsewhere in their answer that would plausibly support the legal theories they proffer. Their efforts fall far short of the plausibility standard articulated in *Twombly*.

Furthermore, Plaintiffs have satisfied their burden of showing that "there is no question of law which might allow the defense to succeed." *GEOMC Co.*, 918 F.3d at 97–98. In their

opposition to Plaintiffs' motion to strike, the Defendants cite Article I and the Fourteenth Amendment as the basis for their freedom to contract claim. *See* Def. Opp. Br. at 11. Neither of these legal theories has any merit. The Court notes that the sole "state action" that Defendants are able to identify is this Court's potential enforcement of the claims that Plaintiffs bring in the event that Plaintiffs prevail. *See id.*

With that in mind, Defendants' Article I argument fails because "[t]he prohibition against impairing the obligation of contracts is directed against state statutes." *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 857 (2d Cir. 1984) (citing U.S. Const. Art. I, § 10 ("No State shall . . . pass any . . . law impairing the Obligation of Contracts. . . .")). Furthermore, the prohibition "is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *Kinney v. Connecticut Jud. Dep't*, 974 F.2d 313, 314 (2d Cir. 1992) (citing *New Orleans Water–Works Co. v. Louisiana Sugar Refining Co.,* 125 U.S. 18, 30 (1888)). Defendants provide no basis to extend that prohibition to a decision by a federal court—an argument that would necessarily contravene principles that have been in place since the nineteenth century.

Defendants' reliance on the Fourteenth Amendment is similarly misguided. Citing no case law, Defendants suggest that if the Court were to eventually grant relief to Plaintiffs, it would interfere with Performance's and M.C.F.'s constitutional freedom "to contract freely without 'state' interference." *See* Def. Opp. Br. at 11. The argument is speculative and devoid of any legal merit. *If* Plaintiffs prevail, then there is no unconstitutional infringement; the argument that enforcement of a valid ERISA claim would constitute an unconstitutional violation of the losing parties' Fourteenth Amendment rights is meritless. As the Second Circuit has

admonished, “an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims.” *Id.* at 98.

As above, Plaintiffs would be prejudiced by having to litigate Defendants’ legally and factually insufficient affirmative defense. The general principle that “[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant granting [Plaintiffs’] Rule 12(f) motion” applies. *Estee Lauder, Inc.*, 189 F.R.D. at 272. Forcing Plaintiffs to litigate the affirmative defense through trial establishes sufficient prejudice to further warrant striking the affirmative defense.

**IV. Conclusion**

For the reasons set forth above, Plaintiffs’ motion to strike is GRANTED. This resolves Dkt. Nos. 23, 35. The post-discovery conference will proceed as scheduled on May 14, 2021 at 3:00 p.m.

SO ORDERED.

Dated: March 30, 2021
New York, New York

ALISON J. NATHAN
United States District Judge