UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/9/21

Trustees Of The New York City District Council Of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, *et al.*,

          Plaintiffs,

–v–

M.C.F. Associates, Inc., *et al.*,

          Defendants.

20-cv-1033 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

    The Plaintiffs bring this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act and Section 301 of the Labor Management Relations Act of 1947 to recover allegedly delinquent employer contributions that they claim are owed. See Dkt. No. 1 ("Compl.") ¶ 1. Before the Court is Defendants' motion to amend their Answers to the Complaint. Dkt. No. 47. For the reasons below, that motion is DENIED.

**I. BACKGROUND**

    Plaintiffs initiated this action on February 6, 2020. Dkt. No. 1. They assert claims under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act and Section 301 of the Labor Management Relations Act of 1947. In the Complaint, Plaintiffs argue that Defendant M.C.F. Associates, Inc. was either a party to or manifested an intention to be bound by two collective bargaining agreements—one with the New York City District Council Carpenters or its predecessor, and the other with the North Atlantic States Regional Council of Carpenters or its predecessor. Compl. ¶¶ 11–12. According to the Plaintiffs, the CBAs required M.C.F. to

1

make periodic contributions to the NYC Funds and the Northeast Funds for work performed within the trade and geographical jurisdiction of the applicable union, and they also required M.C.F. to provide its books and payroll records to the Funds for the purpose of conducting an audit to ensure compliance with the CBAs. *Id*. ¶¶ 13–14. Plaintiffs also allege that in 2018, M.C.F. was wound down and its business was transitioned to Defendant Performance Construction, Inc. *Id*. ¶ 25–26. According to Plaintiffs, Performance is "the alter ego and successor" of M.C.F.; Plaintiffs allege that the two companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Id*. ¶¶ 26–36. And according to Plaintiffs, the decision to wind down M.C.F. and transition its work to Performance was done to circumvent the requirements of the CBAs. *Id*. ¶¶ 25, 37. In line with this theory, Plaintiffs seek to enforce the terms of the CBAs against M.C.F., as a signatory to the CBAs, and against Performance, as M.C.F.'s alter ego and successor. *Id*. ¶¶ 42–53, 55–66, 68–73.

On June 18, 2020, each Defendant filed an Answer to the Complaint. *See* Dkt. Nos. 14, 15.[1] In their Answers, the Defendants denied many of the allegations contained in the Complaint, including that Performance is an alter ego and successor of M.C.F., that the carpentry work performed by Performance is within the trade or geographic jurisdiction of the CBAs, or that M.C.F.'s and Performance's operations are as similar as the Complaint suggests. *See* Answers ¶¶ 9–16. Defendants also asserted seven affirmative defenses. *Id*. ¶¶ 17–37. On July 9, 2020, Plaintiffs moved to strike two of the affirmative defenses, Dkt. No. 23, which Defendants opposed, Dkt. No. 31. After granting Defendants' request to strike two declarations

---

[1] The Court refers to the Defendants' original Answers and Amended Answers jointly. The original Answers were identical, save for the Answers' opening sentences that identify the Defendant whose Answer it is. Defendants represent that the Amended Answer for M.C.F. Associates, Inc. would be "identical as to all substantive portions" to Performance's proposed Amended Answer. Dkt. No. 47-1 ¶ 7.

submitted with Plaintiffs' reply, *see* Dkt. No. 35, this Court granted Plaintiffs' motion to strike the affirmative defenses that asserted unclean hands—premised on alleged actions by the Unions themselves—and that enforcement of the claims asserted in the Complaint against Performance would violate the Defendants' equal protection and freedom to contract under state and federal law. Dkt. No. 45 (citing Answers ¶¶ 24-32, 35).

On April 14, 2021, Defendants filed the instant motion, seeking leave to amend their Answers to include eight additional affirmative defenses:

(1) Eighth Affirmative Defense: unclean hands premised on actions of Plaintiffs' counsel;

(2) Ninth Affirmative Defense: the CBAs "must be interpreted based upon trade practice and usage as it has changed over time," Dkt. No. 47-2 ¶ 48;

(3) Tenth Affirmative Defense: M.C.F. was "induced by fraud and misrepresentation to enter into the CBAs," *Id.* ¶ 55;

(4) Eleventh Affirmative Defense: the CBAs "should be declared invalid or unenforceable due to mutual or unilateral mistake*,*" *Id.* ¶ 56;

(5) Twelfth Affirmative Defense: the CBAs "should be viewed as contracts of adhesion*,*" *Id.* ¶ 60;

(6) Thirteenth Affirmative Defense: the litigation is moot as there are no damages for jobs "that never would have existed had they been bid as union jobs*,*" *Id.* ¶ 64;

(7) Fourteenth Affirmative Defense: Plaintiffs lack standing; and

(8) Fifteenth Affirmative Defense: the "bar to various defenses against ERISA claims is unconstitutional*.*" *Id.* ¶ 73.

For the foregoing reasons, the Court DENIES the motion to file the amended Answers.

## II. LEGAL STANDARD

The parties dispute the legal standard, but the applicable standard is clear. Defendants did not seek leave to file their amended Answers until seven months after the deadline to file amended pleadings as set out in this Court's scheduling order. *See* Dkt. No. 22. "Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied where the moving party has failed to establish good cause." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 16(b). "Good cause is demonstrated by a showing that 'despite [the movant] having exercised diligence, the applicable deadline could not have been reasonably met . . . .'" *Soroof Trading Dev. Co. v. Ge Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (quoting *Oscar v. BMW of North America*, No. 09 Civ. 11, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011)). "Thus, if the proposed amendment relies on information that the party knew or should have known prior to the deadline, leave to amend is properly denied." *Id.*

Moreover, even if good cause for the delay can be shown, "leave to amend need not be granted where the proposed amendment would be futile." *Williams v. Citigroup, Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (alterations and internal quotation marks omitted). "An amendment to add an affirmative defense is futile when the proposed affirmative defense is not a defense to liability, that is, when the proposed affirmative defense lacks a sound basis in law." *In re Currency Conversion Fee Antitrust Litigation*, 264 F.R.D. 100, 118 (S.D.N.Y. 2010).

## III. DISCUSSION

As outlined above, Defendants proffer eight additional affirmative defenses in their proposed amended Answers. *See* Dkt. No. 47-2. Leave to amend is properly denied, "if the proposed amendment relies on information that the party knew or should have known prior the

4

deadline." *Soroof Trading*, 283 F.R.D. at 147.  Such is the case with the ninth, tenth, eleventh, and twelfth affirmative defenses.  *See* Dkt. No. 47-2 ¶¶ 48–60.  Each of these defenses relates to the interpretation, execution, or parties' alleged understanding of the CBAs.  *See, e.g.*, *id.* ¶ 48 (ninth affirmative defense arguing that the CBAs "must be interpreted based upon trade practice and usage as it has changed over time").  The CBAs were in Defendants' possession long before the scheduling order's deadline.  Thus, Defendants have failed to demonstrate good cause for their delay and leave to amend the Answer to include these affirmative defenses is denied.

The same is true for the thirteenth and fifteenth affirmative defenses as each relies on information that Defendants "knew or should have known prior to the deadline." *Soroof Trading*, 283 F.R.D. at 147.  Defendants' proposed thirteenth affirmative defense relates to a counterfactual situation in which Defendants contend they would not have received certain jobs in the past if they had bid them as union jobs. Dkt. No. 47-2 ¶¶ 61–65.  This defense does not rely on any new information that became available after the Court's deadline to amend pleadings passed.  The fifteenth affirmative defense, which argues that the "bar to various defenses against ERISA claims is unconstitutional," *id.* ¶ 73, addresses an issue that Defendants knew of or should have known of long before the deadline.  Thus, the proposed affirmative defenses are rejected for lack of good cause.

Defendants' proposed eighth affirmative defense relies on alleged misconduct by Plaintiffs' counsel regarding subpoenas that came to light during discovery.  *See id.* ¶¶ 38–47.  The Court rejects this affirmative defense because it would be futile for Defendants to plead it.  *See In re Currency Conversion Fee Antitrust Litigation*, 264 F.R.D. at 118.

The Court previously rejected another unclean hands defense proffered by Defendants because it was legally insufficient.  *See* Dkt. No. 45 at 7.  Defendants' current attempt suffers

from many of the same infirmities.  As outlined in that prior opinion, to "succeed on an unclean hands defense, a defendant must demonstrate that *the plaintiff* engaged in fraudulent, deceitful, or bad faith behavior, and that the bad faith *related to the matter at issue* in th[e] litigation." *Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y 2019) (emphasis added) (internal quotation marks omitted).  Even assuming *arguendo* that actions by Plaintiffs' counsel could be attributed to Plaintiffs themselves, Defendants' argument that the action could not have been brought without reliance on counsel's allegedly wrongful subpoenas does not establish a direct nexus with the ERISA claims, the matter at issue in the litigation.  *See* Dkt. No. 47-2 ¶ 45.  Moreover, the "fruits of the poisonous harvest" doctrine, as put by Defendants, *id.* ¶ 46, applies only to criminal proceedings.  *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999).  Thus, the Court rejects Defendants' eighth affirmative defense because it would be futile if pled.

Finally, Defendants' fourteenth affirmative defense, which argues that Plaintiffs lack standing, is rejected as futile because Plaintiffs clearly have standing as fiduciaries of the Funds. *See Laborers Health & Welfare Tr. Fund & Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988) ("The liability created by § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502.").

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to amend the answer is DENIED. This resolves Dkt. No. 47.

SO ORDERED.

Dated: August 9, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge